UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| CÉSAR NÁTER-OYOLA,<br><br>    Plaintiff,<br><br>    v.<br><br>MUNICIPALITY OF ARECIBO, et al.,<br><br>    Defendants. | Civil No. 07-1294 (JAF) |

**OPINION AND ORDER**

Plaintiff, César Náter-Oyola, brings the present action under 42 U.S.C. § 1983 against Defendants, the Municipality of Arecibo ("Arecibo"), Lemuel Soto-Santiago ("Soto"), José Martínez-Benítez, and José Pérez-de-Jesús, in their personal and official capacities, alleging violations of Plaintiffs' rights under the United States Constitution and Puerto Rico law. (Docket No. 1.) Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (Docket No. 46.) Plaintiff opposes (Docket No. 53), and Defendants reply (Docket No. 68).

**I.**

**Factual and Procedural History**

Unless otherwise indicated, we derive the following factual and procedural summary from the parties' motions, exhibits, and statements of uncontested facts. (Docket Nos. 1, 17, 46, 51, 53, 54, 56, 63, 68.)

Plaintiff, an Arecibo resident, has been a non-policymaking employee of Arecibo since December 16, 1985. From the time of the events in question to the present, Plaintiff has been a supervisor in the Public Works Department. His duties generally require him to supervise a crew of employees.

Soto, an Arecibo resident, is a registered voter and affiliate of the New Progressive Party ("PNP"). He won Arecibo's mayoral elections in November 2004 and has been mayor of the municipality since taking office in January 2005. As mayor, Soto delegated his authority to transfer employees to the Director of Public Works.

Martínez-Benítez, an Arecibo resident, was Interim Director of Public Works until September 30, 2006. Martínez-Benítez has been Plaintiff's supervisor since 2005, although Plaintiff admitted that his direct supervisor is Roberto Olmos ("Olmos"). Martínez-Benítez is a registered voter and affiliate of the PNP and was a poll watcher for the party in the 1988, 1992, 1996, and 2004 elections.

Pérez-de-Jesús, an Arecibo resident, has held several employment positions in Arecibo since June 2006. In September 2006, he replaced Martínez-Benítez as Interim Director of Public Works. He subsequently became Director of Environmental Control, Special Aide to the Mini-City Hall of Sabana Hoyos, and finally Supervisor Brigade at Environmental Control. He is a registered voter and affiliate of the PNP. He was a poll watcher in the 2004 and 2008 elections.

Plaintiff is an active member of the Popular Democratic Party ("PPD") and has worked at the Electoral College since he was eighteen years old. He displays PPD signs on his lawn. Plaintiff claims that Soto and Martínez-Benítez visited him at home twice during the 2004 electoral season as part of Soto's routine campaign visits and that Plaintiff told them during the visits that he is a member of the PPD. He also alleges that employees would often talk about politics and their political affiliation while at work. For example, Plaintiff states that he would have political discussions with Martínez-Benítez, and told him specifically that he was a PPD affiliate.

Until 2005, Plaintiff worked as a supervisor of the Municipal Aqueduct employees. On September 13, 2005, Plaintiff received a letter stating that his services as supervisor were needed at García Park and that, while there, he would be under the supervision of Efraín González. (Docket Nos. 46-5, 51-4.) García Park is a recreational park in Arecibo. The transfer letter was sent by Martínez-Benítez, with copies forwarded to Soto and Victor Raíces, Arecibo's Human Resources Director. (Id.) Martínez-Benítez claims that he transferred Plaintiff because González requested a trustworthy supervisor who could stay at the park while González ran errands. From July through September 30, 2006, Plaintiff was the only supervisor transferred by Martínez-Benítez.

Upon receiving the September 13, 2005, letter, Plaintiff asked Martínez-Benítez whether he was being transferred because he was a

PPD affiliate. Plaintiff alleges that Martínez-Benítez replied that the instructions to transfer Plaintiff came from Soto. Plaintiff was transferred the next day. Olmos took over Plaintiff's former duties.

Defendants assert that between September 2005 and August 2006, Plaintiff never requested to meet with Soto or discussed the transfer with him. Plaintiff claims he spoke about the matter with Soto during one of Soto's visits to Plaintiff's work area. On August 24, 2006, Plaintiff sent Soto a letter claiming that there were two secretaries and two additional supervisors at García Park and that this had left Plaintiff without duties and had caused him emotional problems. (Docket Nos. 46-5, 51-4, 56-6.) It also described a visit Soto allegedly made to García Park, where Soto allegedly asked Plaintiff and two secretaries to clean the park's bathrooms. (Id.) According to Soto, he was sick during the time period in which Plaintiff sent this letter and the matter should have been investigated by the interim mayor, Ángel Ramos-Lugo.

On September 6, 2006, Plaintiff's counsel sent Soto and Martínez-Benítez a certified letter informing them that Plaintiff had been unable to perform his duties as supervisor since his transfer to García Park. (Docket Nos. 56-7, 63-7.) The letter also claimed that by allowing this, Soto was ratifying the alleged political persecution against Plaintiff. (Id.) The letter requested that Soto rectify the situation and return Plaintiff's supervisory duties. (Id.) The letter added that the document was meant as an

extrajudicial claim to extend the statute of limitations period, in accordance with Article 1873 of the Puerto Rico Civil Code. (Id.)

The same day, Plaintiff received a letter from Pérez-de-Jesús transferring Plaintiff to work as a supervisor for the construction crew of the Public Works Department "due to service needs." (Docket Nos. 46-5, 51-4.) Pérez-de-Jesús claims that he had been informed in a meeting that the task of overseeing García Park was going to be transferred to the Recreation and Sports Department and this meant Plaintiff could no longer work at García Park as an employee of Public Works. When Plaintiff transferred to the construction crew, he complained to Pérez-de-Jesús that the only space available on the crew's truck was the driver's seat and that he would, therefore, only be able to work there as a chauffeur.

On September 22, 2006, Pérez-de-Jesús again transferred Plaintiff via letter, this time to work as a supervisor with the electrician brigade of the Public Works Department. (Id.) According to Pérez-de-Jesús, he transferred Plaintiff because Plaintiff had complained about his transfer to the construction crew and there was an opening in the electrician crew for a supervisor. Before transferring Plaintiff, however, Pérez-de-Jesús did not ask Plaintiff whether he had experience or training as an electrician. As with his prior transfer, Plaintiff complained to Pérez-de-Jesús that there was no space for him in the crew's truck.

Plaintiff claims that he has not been assigned duties as far back as February 2005. However, he has not lost his job and his salary has not changed.

Plaintiff filed the present action in federal district court on April 5, 2007. (Docket No. 1.) Defendants moved for summary judgment on March 17, 2009. (Docket No. 46.) Plaintiff opposed on April 17, 2009 (Docket No. 53), and Defendant replied on May 21, 2009 (Docket No. 68).

## II.

### Standard For Summary Judgment Under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477

Civil No. 07-1294 (JAF) -7-

U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.

### Analysis

Defendants argue that they are entitled to summary judgment because (1) Plaintiff has failed to establish a cause of action under the Fifth, Ninth, Fourteenth, and Fifteenth Amendments, (2) Plaintiff has failed to establish his prima-facie case under the First Amendment because he has not shown that Defendants knew his political affiliation or that it motivated the transfers, (3) Plaintiff's claims for alleged acts committed between February 2005 and September 13, 2005, are time-barred, (4) there is no basis for municipal liability, and (4) we should decline to exercise supplemental jurisdiction over the claims under Puerto Rico law. (Docket No. 46.)

Plaintiff voluntarily dismisses his claims under the Fifth, Ninth, Fourteenth, and Fifteenth Amendments. (Docket No. 53.)

**A.    Political Discrimination Under the First Amendment**

The First Amendment protects non-policymaking public employees from adverse employment actions based on their non-conforming political opinions. See Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000); see also Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990). In Mount Healthy City School District Board of Education v. Doyle ("Mount Healthy"), the Supreme Court established a two-part burden-shifting framework for analyzing free-speech claims, applicable in the context of political-discrimination lawsuits. Padilla-García, 212 F.3d at 74. "First, the plaintiff must show that [he] engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision. If [he] does so, then the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs . . . ." Id. (citing 429 U.S. 274, 287 (1977)). "[A] plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." Correa-Martínez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990).

Plaintiff has established that he exercised First Amendment rights and has generated an issue of fact as to the existence of an adverse employment action. Defendants transferred Plaintiff on three occasions to positions in which Plaintiff claims he had essentially no duties. Plaintiff has shown that he belongs to a political party in opposition to the one to which Defendants belong and he alleges that Defendants were aware of this affiliation.

Plaintiff's argument falls short, however, because he has failed to adduce any evidence, direct or circumstantial, that his political affiliation was a substantial or motivating factor behind the transfers. Plaintiff's brief in opposition to summary judgment does not even attempt to state a theory of causation, let alone point to facts that would support such an inference. (See Docket No. 53.) He states only that his transfers were "discriminatory because he was sent to a workplace without duties." (Id.) Without any evidence to support his assertion that the transfers were motivated by discriminatory animus, Plaintiff fails to make out a prima-facie case for his First Amendment claim. See Welch v. Ciampa, 542 F.3d 927, 940 (1st Cir. 2008) ("'[T]he mere fact that an adverse action was taken after an employee exercises First Amendment rights is not enough by itself to establish a prima facie case.'" (quoting Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 (1st Cir. 1997)); Correa-Martínez, 903 F.2d at 58.

Accordingly, we grant summary judgment for Defendants on Plaintiff's First Amendment claim because he has not met his burden under Mount Healthy to show that a reasonable factfinder could conclude that his PPD affiliation was a substantial or motivating factor in the transfers. See Padilla-García, 212 F.3d at 74. Because we find that Plaintiff has failed to demonstrate political discrimination in violation of the First Amendment, we need not address Defendants' statute of limitations argument or Arecibo's municipal liability.

**B.    Supplemental Jurisdiction**

Absent a federal question in this case, we decline to exercise supplemental jurisdiction over Plaintiff's Puerto Rico law claims.

**IV.**

**Conclusion**

For the reasons stated herein, we **GRANT** Defendants' motion for summary judgment (Docket No. 46), and **DISMISS** Plaintiff's federal claims **WITH PREJUDICE**. We **DISMISS** Plaintiff's Puerto Rico claims **WITHOUT PREJUDICE** of litigation in Puerto Rico courts.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 24th day of June, 2009.

```
                                    s/José Antonio Fusté
                                    JOSE ANTONIO FUSTE
                                    Chief U.S. District Judge
```